**O**

# 𝔘nited 𝔖tates 𝔇istrict 𝔆ourt
# 𝔆entral 𝔇istrict of 𝔆alifornia

JESUS CASTANON,

        Plaintiff,

    v.

INTERNATIONAL PAPER COMPANY;
and DOES 1–100,

        Defendants.

Case № 2:15-cv-08362-ODW (JC)

**ORDER DENYING MOTION TO REMAND [13]**

## I.   INTRODUCTION

Plaintiff Jesus Castanon moves to remand this action to Ventura County Superior Court for lack of subject matter jurisdiction.  (Motion to Remand ("Mot."), 1–2, ECF No. 13.)   Castanon, a resident of California, argues that diversity of citizenship does not exist between the parties because Defendant International Paper Company's ("International Paper") principal place of business is in California.  (*Id*. 3.) Furthermore, Castanon argues that International Paper failed to make a plausible allegation that the amount in controversy exceeds $75,000.  (*Id*. 6.)  For the reasons discussed below, the Court finds that diversity of citizenship exists and that the amount in controversy exceeds $75,000.   Therefore, this Court **DENIES** Plaintiff's Motion to Remand.

## II.   FACTUAL BACKGROUND

This is a disability discrimination lawsuit arising out of Plaintiff Jesus Castanon's employment at Defendant International Paper Company's facility in Camarillo, California.   Plaintiff's claims arise out of a workplace injury.   In September 2010, Castanon injured his back while working at International Paper's facility in Camarillo, California.  (Complaint ("Compl.") ¶ 7, Not. of Removal Ex. A, ECF No. 1-1.)  Castanon then filed a workers' compensation claim with his employer. (*Id*.)   International Paper disputed the workers' compensation claim, and Castanon subsequently appealed.   (*Id*.)   Castanon ultimately prevailed on appeal and International Paper closed Castanon's workers' compensation claim in September 2014.   (*Id*.)   Castanon then wished to return to work after the injury.   Though Castanon's position at International Paper's facility required him to walk, bend, squat, push items, pull items, and lift approximately 50–70 pounds, two physicians cleared Castanon to return to work with certain restrictions: no lifting, pushing, or pulling of items heavier than ten pounds, and no bending, twisting, or actions that would place his spine in unusual or awkward positions.  (*Id*. ¶ 8.)   Castanon alleges that he requested reasonable accommodations under the physicians' restrictions before

returning to work, but International Paper refused to accommodate him.  (*Id.* ¶ 9.)
Instead, International Paper allegedly offered Castanon to come back to work as an
entry level journeyman mechanic, earning $10 less an hour than what he was making
before his injury and related disability leave.  (*Id.*)

On September 18, 2015, Castanon filed this action in Ventura County Superior
Court, alleging four violations of the California Fair Employment and Housing Act
("FEHA"), Cal. Gov't Code § 12940 *et seq.*: (1) discrimination on the basis of
disability; (2) failure to accommodate; (3) failure to take reasonable steps to prevent
discrimination; and (4) retaliation.  (*Id.* ¶¶ 17–37.)  International Paper removed the
action to this Court on October 26, 2015.  (Not. of Removal, ECF No. 1.)  On
December 21, 2015, Castanon moved to remand.  (ECF No. 13.)

## III.   LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the
Constitution and Congress.  U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v.
Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A suit filed in state court
may be removed to federal court only if the federal court would have had original
jurisdiction over the suit.  28 U.S.C. § 1441(a).  But courts strictly construe the
removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be
rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v.
Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The party seeking removal bears the
burden of establishing federal jurisdiction.  *Durham v. Lockheed Martin Corp.*, 445
F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at 566).

Federal courts have original jurisdiction where an action presents a federal
question under 28 U.S.C. § 1331, or where each plaintiff's citizenship is diverse from
each defendant's citizenship and the amount in controversy exceeds $75,000 under 28
U.S.C. § 1332.

## IV.   DISCUSSION

The parties dispute whether the amount in controversy and diversity of citizenship

1  requirements have been satisfied.  International Paper notes that Castanon seeks
2  compensation for front pay, back pay, emotional distress, punitive damages, and
3  attorneys' fees, and it contends that these damages, in the aggregate, satisfy the
4  amount in controversy requirement.  (Opposition to Remand ("Opp'n") 11, ECF No.
5  15.)  International Paper also argues that all parties are diverse, and that federal court
6  jurisdiction is therefore proper.  (*Id*. 10.)  This Court considers each element of
7  diversity jurisdiction in turn.

8  **A.    Diversity of Citizenship**

9        The Court finds the diversity of citizenship requirement satisfied, as Castanon is
10  a citizen of California and International Paper is incorporated in New York, with a
11  principal place of business in Tennessee.

12        A corporation is deemed to be a citizen of every state and foreign state by
13  which it has been incorporated and of the state or foreign state where it has its
14  principal place of business.  28 U.S.C. § 1332(c)(1).  Here, it is undisputed that
15  Castanon is a citizen of California.  (Mot. 3.)  Castanon, in turn, does not dispute that
16  International Paper is incorporated in the state of New York.  (Opp'n 3.)  Therefore,
17  whether or not the diversity of citizenship requirement is met rests on International
18  Paper's principal place of business.

19        Castanon argues that International Paper's principal place of business is in
20  California, rather than Tennessee.  To support this proposition, Plaintiff cites *Davis v.*
21  *HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2001), in which the Ninth Circuit
22  determined that a defendant corporation was *not* considered a citizen of California for
23  the purposes of satisfying 28 U.S.C. § 1332(c)(1).  However, the *Davis* court reached
24  its conclusion in part by using the "place of operations" test as an alternative to the
25  "nerve center" test.  557 F.3d at 1028.  Reliance on *Davis* and the "place of
26  operations" test is misplaced.  The United States Supreme Court has since rejected the
27  "place of operations" test for determining a corporation's principal place of business;
28  instead, courts must apply the standard "nerve center" test, which holds that a

corporation's principal place of business is where "a corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination…not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Since the Supreme Court's decision in *Hertz*, this Court has consistently applied the "nerve center" test in determining a corporation's principal place of business for purposes of satisfying 28 U.S.C. § 1332(c)(1). *See Dejong v. Prod. Assocs.*, No. CV 14-02357 MMM (DTBx), 2015 U.S. Dist. LEXIS 35386, at *16 (C.D. Cal. Mar. 19, 2015); *Sanderson v. Brooks*, No. CV13-03497-ODW (SHx), 2013 U.S. Dist. LEXIS 93909, at *16–20 (C.D. Cal. July 3, 2013) (Wright II, J.); *Health Facilities of Cal. Mut. Ins. Co. v. British Am. Ins. Grp., Ltd.*, No. CV 10-3736 PSG (JCGx), 2011 U.S. Dist. LEXIS 4272, at *4-6 (C.D. Cal. Jan. 11, 2011).

Here, International Paper has established that Tennessee is its principal place of business under the "nerve center" test. International Paper's corporate headquarters is located at 6400 Poplar Avenue in Memphis, Tennessee. (Adair Decl. ¶ 5, ECF No. 15-1.) International Paper's books and records are principally located in Memphis, Tennessee. (*Id*. ¶ 9.) Its senior executive team, including the Chief Executive Officer, Chief Financial Officer, Controller, General Counsel, Secretary, and Senior Vice President of Human Resources, all work out of International Paper's headquarters in Memphis, Tennessee. (*Id*. ¶ 10.) Nine out of eleven International Paper executive officers work at the company's headquarters in Tennessee; the other two operate abroad in Brazil and Brussels. (*Id*. ¶ 12.) The majority of International Paper's administrative departments, including the Human Resources Department, the Legal Department, the Finance Department, and the Information Technology Department, are all located in Tennessee. (*Id*. ¶ 14.) Finally, International Paper's Board of Directors regularly holds meetings in Memphis. (*Id*. ¶ 13.) Because International Paper has clearly established that Tennessee is its principal place of business under the

1    applicable "nerve center" test, the jurisdictional requirement for diversity of

2    citizenship is satisfied.

3    **B.    Amount in Controversy**

4          Castanon's Complaint does not specify the exact amount of damages he seeks.

5    When a plaintiff's state court complaint does not specify a particular damage amount,

6    the defendant has the burden of establishing, by a preponderance of the evidence, that

7    the amount in controversy exceeds the jurisdictional amount.  *Sanchez v. Monumental*

8    *Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  Therefore, as the proponent of

9    federal jurisdiction, International Paper bears the burden of showing that it is "more

10   likely than not" that the amount in controversy exceeds $75,000.   *Id.* at 398.

11   Defendants can meet this burden by offering facts that support the contention that the

12   amount in controversy exceeds the jurisdictional minimum, or producing evidence of

13   jury verdicts for damages awarded in cases with analogous facts.  *Simmons v. PCR*

14   *Tech.*, 209 F. Supp. 2d 1029, 1033–34 (N.D. Cal. 2002).

15         This Court finds that, when aggregating all of the damages Castanon seeks, the

16   amount in controversy exceeds the jurisdictional minimum.

17         1.    Lost Earnings

18         International Paper asserts that Castanon seeks back and front pay damages.

19   (Mot. 11.)  Castanon injured his back while working for the Defendant, in September

20   of 2010.  (*Id.* ¶ 7.)  Castanon then left for medical leave in the same month.  (Bates

21   Decl. ¶ 15, ECF No. 15-2.)  Before Castanon left for medical leave, he earned $24.30

22   per hour and worked 8 hours per day, 5 days per week.  (*Id.* ¶ 7.)  While he remained

23   employed by International Paper, Castanon did not perform any work and did not

24   receive any compensation after going on medical leave.  (*Id.* ¶¶ 9–10.)  Thus, by

25   multiplying Castanon's daily wage prior to going on medical leave ($24.30 per hour, 8

26   hours per day) by the number of workdays from the time Castanon went on medical

27   leave to the date this motion was scheduled to be heard on January 25, 2016 (345

28   workdays), International Paper contends that Castanon's back pay damages equal

1    $67,068.  (Opp'n 11–12.)

2         However, the amount in controversy must be determined as of the date of

3    removal.  *Lighthouse Legal Fin. v. Doyle*, No. CV 13-2625 UD (DUTYx), 2013 U.S.

4    Dist. LEXIS 66540, at *2 n.1 (C.D. Cal. Apr. 29, 2013).  Here, International Paper

5    incorrectly based its estimated back pay amount on the workdays between September

6    2014 and the date of this motion's scheduled hearing, January 25, 2016.  (Opp'n 11–

7    12.)  However, while the Court acknowledges that International Paper's back pay

8    estimate is inflated, the Court nonetheless notes that, using the correct calculations,

9    Castanon's back pay damages are substantial.   After conducting an accurate

10   calculation, this Court finds that, assuming Castanon was injured on September 1,

11   2014[1] and using the correct October 26, 2015 removal date instead of the January

12   2016 hearing date, Castanon could potentially receive back pay in the amount of

13   $58,514.40.

14        In terms of front pay, International Paper contends that Castanon could recover

15   up to $1,086,696.  (Opp'n 12.)  Moreover, International Paper asserts that an award of

16   even one year of front pay (here, $50,544) would put the amount in controversy over

17   the jurisdictional amount.  (*Id.*)  Plaintiff's Complaint, however, does not include a

18   request for front pay.  (*See generally* Compl.)  While International Paper does cite

19   cases where plaintiffs alleging wrongful termination under FEHA have received

20   awards for future economic damages post-termination, it fails to point to any evidence

21   in the record that Castanon will seek a similar jury award here.  (*See* Opp'n 12.)  As a

22   result, International Paper's lost front pay argument is insufficient and the Court will

23   not consider any hypothetical front pay award in the jurisdiction analysis.   *See*

24   *Robinson v. Am. Airlines, Inc.*, No. CV 15-0287 FMO (MRWx), 2015 U.S. Dist.

25   LEXIS 21443, at *7 (C.D. Cal. Feb. 20, 2015) (declining to include front pay in

26   amount of controversy calculation where neither the plaintiff's Complaint requested it

27   nor the defendant demonstrate that the jurisdictional amount should include it).

28

---

[1] Castanon does not allege an exact injury date in his Complaint.  (*See* Compl. ¶ 7.)

1  Therefore, the Court will only consider lost back pay wages in the amount in
2  controversy analysis.

3      2.     Emotional Distress and Punitive Damages

4  International Paper next contends that emotional distress damages and punitive
5  damages, when added to lost earnings, will meet the amount in controversy
6  requirement.  (Opp'n 14.)  In determining the amount in controversy, the Court may
7  include the request for punitive damages and emotional distress damages if a plaintiff
8  may recover them under the applicable law.  *Gibson v. Chrysler Corp.*, 261 F.3d 927,
9  947 (9th Cir. 2001); *Simmons*, 209 F. Supp. 2d at 1033–34.  California law allows for
10  the recovery of punitive damages under FEHA, wrongful termination, and intentional
11  infliction of emotional distress claims.  *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167,
12  176 (1980); *Simmons*, 209 F. Supp. 2d at 1033.

13  International Paper cites several analogous California cases where plaintiffs
14  have alleged discrimination under FEHA.  (Opp'n 13–15.)  The cited cases include
15  awards based on a plaintiff's disability discrimination claim or some other form of
16  discrimination in violation of FEHA, along with retaliation claims.  All of the
17  plaintiffs in these cases received large damage awards for emotional distress, each
18  totaling over $75,000.  (*See id*.)  Each of the factually analogous cases proffered by
19  International Paper also feature plaintiffs who received punitive damages awards of at
20  least $20,000.  (*Id*.)  Since each cited case highlights punitive damage awards in
21  excess of $20,000, it is plausible that Castanon could be awarded a similar amount for
22  non-economic damages.  Because Castanon could receive a punitive damages award
23  that, standing alone, could meet the $75,000 jurisdictional minimum, it is also a
24  realistic possibility that, combined with the potential $58,514.40 in back pay,
25  Castanon's potential punitive damages could meet the amount in controversy
26  requirement.

27      3.     Attorneys' Fees

28  Castanon also seeks to recover attorneys' fees.  (Compl. 7.)  So long as the

1  underlying statute authorizes a fee award for a successful litigant, attorneys' fees can
2  be taken into consideration when determining the amount in controversy.  *Galt G/S v.*
3  *JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998).   Attorneys' fees are
4  recoverable by the prevailing party in a FEHA action.  *Simmons*, 209 F. Supp. 2d at
5  1034 (citing Cal. Gov't Code § 12965).   As such, attorneys' fees are properly
6  considered in the jurisdiction analysis.   In *Simmons*, the court determined that the
7  amount in controversy determination should account for reasonably foreseeable post-
8  removal attorneys' fees.   *Id.* at 1034–35.   There, the court reasoned that "such
9  [attorneys'] fees necessarily accrue until the action is resolved.   Thus, the Ninth
10  Circuit must have anticipated that district courts would [consider] the amount that can
11  be  reasonably  be  anticipated  at  the  time  of  removal,  not  merely  those  already
12  incurred."  *Id.*  Accordingly, this Court will consider post-removal attorneys' fees
13  when determining the amount in controversy.

14       International  Paper  cites  California  jury  verdicts  in  FEHA  cases  awarding
15  attorneys' fees of $160,050, $114,584, and $818,000.  (Opp'n 17.)  International
16  Paper also offers, in what it terms "the most conservative estimates [sic]," that
17  Castanon's attorneys' fees would reach $30,000.  (*Id.* 2–3, 17.)  In reaching its
18  estimate, International Paper cites *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-
19  09154-AB (AJWx), 2015 U.S. Dist. LEXIS 25921 (C.D. Cal. Mar. 3, 2015), where
20  the court, in considering a motion to remand FEHA claims, held that a reasonable rate
21  for attorneys' fees in employment cases is $300 per hour.  *Id.* at *12.  The *Sasso* Court
22  also held that "recent estimates for the number of hours expended through trial for
23  employment cases in this district have ranged from 100 to 300 hours," and thus, "100
24  hours is an appropriate and conservative estimate."  *Id.*  Accordingly, the *Sasso* court
25  held that attorneys' fees in that case were reasonably expected to equal at least
26  $30,000.   *Id.*   Adopting the same conservative estimate in this case, the Court
27  concludes that Castanon's demand for attorneys' fees under FEHA adds at least
28  $30,000  to  the  amount  in  controversy.   However,  even  without  these  fees,  the

potential damages available for back pay, emotional distress, and punitive damages exceeds the jurisdictional minimum and therefore federal jurisdiction is proper.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that it has subject matter jurisdiction over this action under 28 U.S.C. § 1332.  Accordingly, the Court **DENIES** Castanon's Motion to Remand.

**IT IS SO ORDERED.**

February 11, 2016

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**